UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

05 - 10210 MEL

2005 FEB -1  P 4: 23

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| Charles Thornton, )<br>Plaintiff, )<br>)<br>v. )<br>)<br>United Parcel Service, Inc., )<br>Defendant. ) | CIVIL ACTION NO.: |

MAGISTRATE JUDGE _____

RECEIPT # _____
AMOUNT $ _____
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE _____

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Introduction

Plaintiff Charles Thornton files this civil action for money damages against his former employer Defendant United States Parcel Company, Inc., alleging a violation of the American's With Disabilities Act, 42 U.S.C. § 12101, et seq and M.G.L. c. 151B, § 4(16).

Jurisdiction

1.    Jurisdiction of this action arises under 28 U.S.C. §§1343; 1331; 1332, and the American's With Disabilities Act, 42 U.S.C § 12101, et seq (hereinafter the "A.D.A"). This court also has pendant jurisdiction of the state claims.

Venue

2.    Venue is proper in this court as this is the judicial district in which Plaintiff Charles Thornton resides and in which the relevant events occurred.

Parties

3.    Plaintiff Charles Thornton (hereinafter "Mr. Thornton") is an individual residing in Billerica, Middlesex County, Massachusetts.

4.    Defendant United Parcel Service, Inc. (hereinafter "U.P.S.") is a corporation duly organized pursuant to the laws of the state of Delaware with a principal place of business at 55 Glenlake Parkway, NE Atlanta, GA; and authorized to conduct business in Chelmsford, MA and various other locations throughout the Commonwealth of Massachusetts.

<u>Factual Background</u>

5.    Mr. Thornton began working for U.P.S. in 1968 as a feed driver, which is a position that requires an employee, amongst other things, to connect trailers and drive a tractor trailer over long distances.

6.    After several years of employment with U.P.S., Mr. Thornton suffered a chronic back problem for which he sought reasonable accommodations from U.P.S.

7.    In 1993, Mr. Thornton filed a Charge of Discrimination alleging discrimination on the basis of a disability due to his chronic back condition with the Equal Employment Opportunity Commission (hereinafter "E.E.O.C."), Docket Number 16C930585 and a corresponding Charge of Discrimination with the Massachusetts Commission Against Discrimination (hereinafter "M.C.A.D) Docket Number 93BEM0030.

8.    Specifically, in July 1995, Mr. Thornton identified certain work restrictions: (1) an inability to lift over 30 pounds and (2) an inability to drive more than 90 minutes without a taking breaks to adjust his back condition.

9.    As a reasonable accommodation to Mr. Thornton's back condition, U.P.S. agreed on August 7, 1995, that Mr. Thornton could bid on assignments that fit within his work restrictions.

10.    On October 2, 1996, the E.E.O.C. disposed of Mr. Thornton's charges of discrimination docket number 16C930585 subject to the agreement U.P.S. to perform its promises and representations made on August 7, 1995.

11.    Notwithstanding the agreement in August 1995 of U.P.S. to abide by Mr. Thornton's work restrictions, on numerous occasions from 1995 to 2002, U.P.S. insisted that Mr. Thornton perform tasks outside of the identified work restrictions.

12.    The refusal of U.P.S. to consistently honor the maximum lifting restriction of 30lbs and the 90-minute driving restriction has resulted in further exacerbation of Mr. Thornton's back condition.

13.    On May 9, 2000, a physician selected by U.P.S., diagnosed Mr. Thornton with chronic ulnar nerve neuropathy on the right side and severe nerve impingement of the right shoulder.    The physician further noted that Mr. Thornton required surgical intervention and that Mr. Thornton could not drive a tractor trailer until the surgical procedure was completed.

14.    Initially, in May 2000, U.P.S. declined Mr. Thornton's claim for worker's compensation related to the injury to his right shoulder and refused to pay for the surgery related to Mr. Thornton's right shoulder, claiming that the injury was not work-related.

15.    As a result of the medical report of May 9, 2000, Mr. Thornton was forced to take a medical leave of absence.

16.    On July 11, 2000, the U.P.S. physician amended his report of May 9, 2000, and modified Mr. Thornton's work restrictions to a period of three (3) weeks to include the following (1) no driving,  (2) no climbing, and (3) no lifting beyond 30lbs.

17.    In July 2000, U.P.S. rejected Mr. Thornton's request for light duty notwithstanding its contract with Teamsters Local 25 (hereinafter "the Union") which required U.P.S. to offer an employee in Mr. Thornton's position, either a full-time light duty position or two part-time light duty positions. To add further insult to injury, U.P.S. objected to Mr. Thornton's application on July 28, 2000 for unemployment benefits.

18.    On September 18, 2000, a second physician selected by U.P.S. cleared Mr. Thornton to return to work to drive a tractor trailer.

Factual Allegations

19.    Mr. Thornton restates and realleges paragraphs 1 through 18 as fully set forth herein.

20.    Upon Mr. Thornton's return to work on September 18, 2000, as a tractor trailer driver, he met with his supervisor who assigned Mr. Thornton to a driving route within his work restrictions of no lifting beyond 30 lbs. This assignment required Mr. Thornton to drive a tractor trailer roundtrip from Chelmsford, MA to Hartford, CT three days out of the week; the other portion of the assignment required Mr. Thornton to drive a tractor trailer roundtrip three times a day from Chelmsford, MA to Worcester, MA two days out of the week.

21.    As the Chelmsford-Worcester-Hartford route was a driving only assignment, Mr. Thornton satisfactorily performed this assignment from September 18, 2001 to January 2001.

22.    On January 20, 2001, Mr. Thornton underwent an independent medical evaluation at the request of U.P.S. related to Mr. Thornton's worker's compensation claim.

4

23.    As part of the evaluation on January 20, 2001, the physician recommended the continuation of the "permanent work restrictions of no heavy lifting, such as loading and unloading of trucks" because "[the restrictions] have been effective in allowing him to continue to work on a regular basis."

24.    In February 2001, shortly before the bidding process for driving assignments concluded, Mr. Thornton was informed that he could not drive the Chelmsford-Worcester-Hartford route.

25.    Mr. Thornton was advised to bid on other available jobs or face the prospect of loosing his job at U.P.S. Mr. Thornton initially bid on an assignment that included a second driver to share long distance driving responsibilities.    Mr. Thornton was unsuccessful in obtaining this bid because he could not find a driving partner within such a short period of time as the bidding process for assignments ended on or about February 12, 2001.

26.    As an alternative, Mr. Thornton requested the opportunity to perform other available light duty or "inside jobs" as provided for in the collective bargaining agreement between the Union and U.P.S.

27.    The term "inside" jobs includes but is not limited to the following jobs: operations clerk, car washer, sorter, irregular processor, preloader, pick off/high volume, pick off/runout belt.

28.    In February 2001, Mr. Thornton was denied the opportunity to work available light duty or "inside " jobs.

29.    As a consequence, Mr. Thornton reluctantly selected an assignment to drive a tractor trailer from Chelmsford, MA to Buffalo, N.Y. because, in his estimation, this assignment was the least physically demanding assignment available.

30.    The Chelmsford-Buffalo route included tasks clearly outside of Mr. Thornton's identified work restrictions because this assignment required lifting a dolly weighing 70-90 lbs in order to attach double trailers and it required Mr. Thornton to drive for more than 90 minutes without breaks.

31.    The refusal in February 2001 of U.P.S. to offer Mr. Thornton either the Chelmsford-Worcester-Hartford assignment, or an available "inside" or light-duty position constitutes a failure to offer a reasonable accommodation.

32.    Furthermore, the failure of U.P.S. to offer either the Chelmsford-Worcester-Hartford assignment or a light duty assignment exacerbated Mr. Thornton's physical disability.

33.    On or about March 5, 2001, during a trip to Buffalo, Mr. Thornton suffered a back spasm, which required medical treatment in the emergency room of a hospital in Buffalo, N.Y. Mr. Thornton's condition was so severe that he had to stay in a hotel overnight in Buffalo, N.Y. and take the train back to Massachusetts the following day.

34.    After the incident of March 5, 2001, Mr. Thornton was out of work a number of weeks.

35.    On March 14, 2001, a physician from the U.P.S. medical referral list issued the following work restrictions for Mr. Thornton (1) no driving longer than 90 minutes; (2) 301b lifting restriction; (3) a maximum work day nine (9) hours; and (4) no repetitive

lifting. These restrictions are the same restrictions to which U.P.S. agreed in August 1995.

36.     After a few weeks of recuperation, Mr. Thornton returned to work and was reassigned to the Chelmsford-Worcester-Hartford route. Additionally, upon his return, Mr. Thornton satisfactorily performed various "inside" jobs such as car washing and sweeping out trailers.

37.     In the fall of 2001, U.P.S. removed Mr. Thornton from the Chelmsford-Worcester-Hartford route and reassigned him again to the Chelmsford-Buffalo route.

38.     Prior to accepting the reassignment to the Chelmsford-Buffalo route in the fall of 2001, Mr. Thornton, again, requested to work in an available light duty or "inside" job. U.P.S. denied Mr. Thornton's request to work a light duty or "inside" job.

39.     Faced with the prospect of loosing his job for the second time within a year, Mr. Thornton reluctantly accepted the Chelmsford-Buffalo route.

40.     Throughout 2002 Mr. Thornton's back condition and shoulder condition rapidly deteriorated because the Chelmsford-Buffalo assignment involved lifting between 70-90lbs.

41.     On September 16, 2002, Mr. Thornton underwent his biannual physical examination as required by the Department of Transportation (hereinafter " the D.O.T."). Mr. Thornton was advised that he had failed the physical examination due to his job-related injuries to his right shoulder and chronic lower back pain.

42.     Based upon the physical evaluation of September 16, 2002, Mr. Thornton was diagnosed as suffering from a permanent medical condition related to his right shoulder

injury and chronic back problem which precluded him from working as a tractor trailer driver.

43.    On September 16, 2002, Mr. Thornton immediately advised his supervisor, Kenneth Mundry (hereinafter "Mr. Mundry"), that he had failed the D.O.T. physical examination.

44.    Upon learning of Mr. Thornton's failure to pass the D.O.T. examination, Mr. Mundry offered Mr. Thornton an "inside" job in accordance with the collective bargaining agreement with the Union.    Approximately one hour later, Mr. Mundry rescinded the offer of an "inside" job to Mr. Thornton.

45.    Mr. Thornton filed a grievance with the Union based upon the failure of U.P.S. to offer him an "inside" job.

46.    The Union declined to proceed with Mr. Thornton's grievance regarding U.P.S.'s failure to provide him with an "inside" job.

47.    On September 19, 2002, and December 6, 2002, respectively, physicians selected by U.P.S. determined that Mr. Thornton's medical condition had deteriorated to the point that he was permanently unable to perform "inside" jobs such as operations clerk, car washer; sorter, irregular processor, preloader, pick off/high volume, and pick off/runout belt.

48.    Mr. Thornton last worked at U.P.S. on September 16, 2002 and eventually retired from U.P.S.

49.    The failure of U.P.S. between 2001 and September 2002 to continuously offer Mr. Thornton the reasonable accommodation of driving with a maximum lifting restriction of 30lbs, or in the alternative, allow him to work available "inside" jobs, caused Mr.

Thornton's physical condition to deteriorate to the point that he was declared medically unfit to perform <u>any</u> function at U.P.S.

50.   The failure of U.P.S. to consistently adhere to the work restrictions in place or offer an available "inside" job between February 2001 and September 16, 2002 job is a violation of the A.D.A. 42 U.S.C. § 12101 and M.G.L. c. 151B, § 4 (16).

51.   U.P.S discriminated against Mr. Thornton on the basis of his handicap due to his right shoulder injury and chronic back condition.

52.   The actions of U.P.S. were intentional, malicious and/or done with reckless indifference to Mr. Thornton's rights.

53.   Mr. Thornton has been injured and has suffered financial as well as physical injury as a result of the discriminatory acts of U.P.S.

54.   Mr. Thornton has complied with all statutory requirements and conditions precedent necessary to maintain this action by filing a timely charge with the MCAD and the EEOC.

55.   On November 4, 2004, the EEOC issued Mr. Thornton a notice of right of suit.

### COUNT I- DISABILITY DISCRIMINATION
**(Violation of the American with Disabilities Act 42 U.S.C., §12101, et seq)**

56.   Mr. Thornton repeats the allegations contained in paragraph 1 through 55 as if fully set forth herein.

57.   Mr. Thornton at all relevant times was a qualified individual with a disability within the meaning of 42 U.S.C. 12111, §101(8).

58.   The acts of U.P.S. represent, inter alia, intentional violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

## COUNT II- Handicap Discrimination
### (Violation of M.G.L. c. 151B, § 4(16))

59.     Mr. Thornton repeats the allegations contained in paragraphs 1 through 58 as if fully set forth herein.

60.     The conduct of U.P.S. represents, inter alia, intentional discrimination on the basis of handicap in violation of M.G.L. c. 151B, § 4 (16).

### RELIEF SOUGHT

WHEREFORE, Mr. Thornton prays that this Honorable Court:

1.     Enter judgment against U.P.S. on Count I for compensatory damages, punitive damages, reasonable attorney's fees, interest and costs.

2.     Enter judgment against U.P.S. on Count II for compensatory damages, punitive damages, reasonable attorney's fees, interest and costs.

3.     Order U.P.S. to reinstate Mr. Thornton with back pay; and

4.     Enter such other and further relief as the Honorable Court may deem just and necessary.

**THE PLAINTIFF CHARLES THORNTON REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Charles Thornton
By His Attorney

Stephen Hrones
BBO # 242860
Hrones, Garrity – Hedges
Lewis Wharf –Bay 232
Boston, MA 02110
(617) 227-4019

Date: February 1, 2005