UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
CHARLES THORNTON,        )
     Plaintiff           )
                         )    Civ. Action No. 05-10210-MEL
                         )
v.                       )
                         )
                         )
UNITED PARCEL SERVICE INC., )
     Respondent          )
                         )
```

### UNITED PARCEL SERVICE INC.'S ANSWER TO PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

The Defendant, United Parcel Service Inc. ('UPS"), answers the Plaintiff's Complaint as follows:

1. Admit

2. UPS admits that venue is proper in this court. UPS is without sufficient information to admit or deny whether the Plaintiff, Charles Thornton, resides in this judicial district, and therefore leaves Mr. Thornton to his proof.

3. UPS admits that Mr. Thornton is an individual. UPS is without sufficient information to admit or deny the remaining allegations contained in paragraph three, and therefore leaves Mr. Thornton to his proof.

4. UPS admits that it is authorized to conduct business in Chelmsford MA and various other locations throughout the Commonwealth of Massachusetts and that its principal place of business is at 55 Glenlake Parkway, NE Atlanta, GA. UPS denies the remaining allegations contained in this paragraph.

5   Admit.

6. UPS is without sufficient information to admit or deny the allegations contained in this paragraph and therefore leaves Mr. Thornton to his proof.

7. Currently UPS has been unable to locate records related to the allegations contained in paragraph seven. Subject to subsequent modification, UPS currently does not have sufficient information to either admit or deny the allegations of the paragraph and therefore leaves Mr. Thornton to his proof.

8. UPS admits that in July 1995 Mr. Thornton identified, as certain work restrictions, an inability to lift over thirty pounds and an inability to drive more than 90 minutes without taking breaks to adjust his back condition. To the extent it references the Charge of Discrimination referenced in paragraph seven, UPS has been unable to locate records related to these allegations. Therefore, subject to subsequent modification, UPS currently does not have sufficient information to either admit or deny the allegations of the paragraph and therefore leaves Mr. Thornton to his proof.

9. UPS admits that on August 7, 1995, Mr. Thornton bid on a route that fit his work restrictions. Upon information and belief, UPS denies that there was an agreement.

10. Currently UPS has been unable to locate records regarding whether the EEOC disposed of Mr. Thornton's charges of discrimination, docket number 16C030585, and therefore, subject to subsequent modification, UPS currently does not have sufficient information to either admit or deny when the EEOC disposed of Mr. Thornton's charges. Upon information and belief, UPS denies that there was an agreement under which UPS agreed to perform promises and representations made on August 7, 1995.

11. Upon information and belief, UPS denies that it insisted on numerous occasions that Mr. Thornton perform tasks outside of the identified work restrictions and denies that there was an agreement in August 1995.

12. UPS denies that it refused to consistently honor the maximum lifting restriction of 30 lbs and the 90-minute driving restrictions and denies that its refusal has resulted in further exacerbation of Mr. Thornton's back condition.

13. UPS admits that Dr. Albert V. Franchi's May 9, 2000 medical note states "shoulder impinged" and "no truck driving until decompression surgery." UPS denies that Dr. Franchi was a physician selected by UPS. UPS is without sufficient information to admit or deny the remaining allegations contained in paragraph thirteen and therefore leaves Mr. Thornton to his proof.

14. Admit

15. UPS admits that after May 9, 2000, Mr. Thornton took a medical leave of absence.

16. UPS admits that Dr. Franchi's July 11, 2000 medical note called for three weeks of modified work that included: (1) no driving of a tractor trailer; (2) no climbing; and (3) no lifting beyond 35 pounds. UPS denies that Dr. Franchi was a UPS physician.

17. UPS admits that it objected to Mr. Thornton's July 28, 2000 application for unemployment benefits. UPS denies the remaining allegations contained in this paragraph.

18. UPS admits that on September 18, 2000, a physician cleared Mr. Thornton to return to work to drive a tractor trailer. UPS denies that the physician was a second physician chosen by UPS.

19. UPS herein restates its answers to paragraph 1 through 18.

20. UPS admits that upon returning to work on or around September 18, 2000, Mr. Thornton acquired the Chelmsford-Worcester-Hartford route by bumping a less senior driver. UPS denies the remaining allegations contained in paragraph twenty.

21. UPS is without sufficient information to admit or deny the allegations contained in this paragraph and therefore leaves Mr. Thornton to his proof.

22. Admit

23. Admit

24. Deny

25. UPS denies that it advised Mr. Thornton to bid on other available jobs or face the prospect of losing his job at UPS. UPS admits that Mr. Thornton initially bid on an assignment that included a second driver to share long distance driving responsibilities. UPS further admits that Mr. Thornton was unsuccessful in obtaining this bid because he did not find a driving partner. UPS denies the remaining allegations contained in this paragraph.

26. Deny

27. Deny

28. Deny

29. UPS admits that Mr. Thornton chose to bid on an assignment to drive a tractor trailer from Chelmsford, MA to Philadelphia, PA and then to Buffalo NY. UPS is without sufficient information to admit or deny the remaining allegations in paragraph twenty-nine and therefore leaves Mr. Thornton to his proof.

30. UPS denies that the Chelmsford-Buffalo route required tasks clearly outside of Mr. Thornton's then identified lifting restrictions. UPS denies that the assignment required lifting a dolly weighing 70-90 pounds in order to attach double trailers. UPS admits that the route required Mr. Thornton to drive for more than 90 minutes without breaks.

31. Deny

32. Deny

33. UPS admits that on or about March 5, 2001, during a trip to Buffalo, Mr. Thornton suffered a back spasm, which required medical treatment. UPS admits that Mr. Thornton stayed in a hotel overnight in Buffalo, NY and took the train back to Massachusetts the following day. UPS is without sufficient information to admit or deny the remaining allegations contained in paragraph thirty-three and therefore leaves Mr. Thornton to his proof.

34. Admit

35. UPS admits that on March 14, 2001, a physician from the UPS medical referral list issued the following work restrictions for Mr. Thornton: (1) no driving longer than 90 minutes; (2) 30lb lifting restriction; (3) a maximum work day of nine (9) hours; and (4) no repetitive lifting. Upon information and belief, UPS denies that there was such an agreement in August 1995.

36. UPS admits that when Mr. Thornton returned to work, he acquired the Chelmsford-Worcester-Hartford route by exercising his seniority and bumping a less senior driver. UPS denies the remaining allegations contained in paragraph thirty-six.

37. UPS admits that sometime during the week ending December 8, 2001, Mr. Thornton bid on the Chelmsford-Buffalo route. UPS denies that it removed Mr. Thornton from the Chelmsford-Hartford route and reassigned him again to the Chelmsford-Buffalo route.

38. Deny

39. Deny

40. UPS denies that the Chelmsford-Buffalo route required lifting between 70-90 pounds. UPS is without sufficient information to admit or deny the allegations regarding the alleged deterioration of Mr. Thornton's back and shoulder conditions and therefore leaves Mr. Thornton to his proof.

41. Admit

42. Admit

43. UPS admits that Kenneth Mundry, Mr. Thorton's supervisor, at some time became aware that Mr. Thornton had failed the DOT physical examination. UPS is without sufficient information to admit or deny the remaining allegations contained in paragraph forty-three and therefore leaves Mr. Thornton to his proof.

44. Deny

45. UPS is without sufficient information to admit or deny the allegations contained in this paragraph and therefore leaves Mr. Thornton to his proof.

46. UPS is without sufficient information to admit or deny the allegations contained in this paragraph and therefore leaves Mr. Thornton to his proof.

47. UPS admits that on September 19, 2002, Dr. Sarah S. Kramer determined that Mr. Thornton's medical condition had deteriorated to the point that he was

permanently unable to perform inside jobs such as unloader/loader. Currently, UPS is unable to locate records regarding the remaining allegations contained in this paragraph. Therefore, subject to subsequent modifications, UPS currently does not have sufficient information to either admit or deny the remaining allegations contained in this paragraph and therefore leaves Mr. Thornton to his proof.

48. Admit

49. Deny

50. Deny

51. Deny

52. Deny

53. Deny

54. UPS is without sufficient information to admit or deny the allegations contained in paragraph fifty-four and therefore leaves Mr. Thornton to his proof.

55. UPS is without sufficient information to admit or deny the allegations contained in paragraph fifty-five and therefore leaves Mr. Thornton to his proof.

56. UPS restates its answers to paragraph 1 through 55.

57. Deny

58. Deny

59. Deny

60. Deny

## FIRST AFFIRMATIVE DEFENSE

Mr. Thornton's claims should be dismissed on the grounds that he has failed to mitigate his damages.

## SECOND AFFIRMATIVE DEFENSE

Mr. Thorton's claims should be dismissed on the grounds that their resolution involves the interpretation of the collective bargaining agreement and therefore are preempted by the National Labor Relations Act.

## THIRD AFFIRMATIVE DEFENSE

Mr. Thornton's claim under 42 U.S.C. §12101, et. seq., should be dismissed for failure to state a claim upon which relief can be granted.

## FOURTH AFFIRMATIVE DEFENSE

Mr. Thornton's claim under Mass. Gen. L. ch. 151B, should be dismissed for failure to state a claim upon which relief can be granted.

## FIFTH AFFIRMATIVE DEFENSE

The conduct alleged in paragraphs 37-48 was not subject to an administrative charge. Therefore, Mr. Thornton's claims under Count I and Count II, that UPS discriminated against him from the fall of 2001 until September 16, 2002, should be dismissed for failure to exhaust his administrative remedies for this claim.

## SIXTH AFFIRMATIVE DEFENSE

Mr. Thornton's discrimination claim under Massachusetts General Laws ch. 151B for conduct occurring prior to February 1, 2002 should be dismissed on the grounds that it is barred by the three year statute of limitations.

## SEVENTH AFFIRMATIVE DEFENSE

Mr. Thorton's allegations regarding conduct that occurred prior to January 20, 2001 (see paragraphs 6-21), should be dismissed for failure to either exhaust his administrative remedies or to file the allegations contained in his 1993 Charge of Discrimination claim in court within the ninety day period.

United Parcel Service Inc.
By its attorneys

/s/ Laurie Alexander-Krom

Hugh F. Murray, III, BBO# 557175
Laurie Alexander-Krom, BBO# 637385
Murtha Cullina LLP
99 High Street
Boston, MA 02110
617-457-4000

Certificate of Service
I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand.
Date: 4/28/05

Date: April 28, 2005

9