UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHARLES THORNTON,
    Plaintiff

v.

UNITED PARCEL SERVICE, INC.,
    Defendant

]
]
]  C.A. NO. 05-10210-RGS
]
]
]
]

**DEFENDANT'S MOTION IN LIMINE
PRECLUDING ANY TESTIMONY REGARDING
A UPS "100% HEALED" or "100% MEDICAL RELEASE" POLICY**

Defendant United Parcel Service, Inc. ("UPS") moves to preclude plaintiff from introducing any evidence concerning the alleged existence of a "100% healed" or "100% Medical Release" policy or practice at UPS. UPS denies that it now has, or ever has had, such a policy. Assuming, arguendo, that such a policy was ever applied to any employees other than Mr. Thornton, such evidence would not be relevant to Plaintiff's claim because the undisputed evidence is that *he* was never precluded from working on the basis that he was not "100%". See Fed. R. Ev. 401. The undisputed evidence is that Plaintiff was a tractor-trailer driver who, over a substantial period of years had various injuries and workers' compensation claims causing him to miss work from time to time. In each circumstance, Plaintiff returned to work *with* medical restrictions -- until he lost his qualification to driver under U.S. DOT regulations on September 16, 2002. Whether UPS ever refused to permit any other employees to return to work until they were "100%" (which it denies) is not the issue relevant to this case.

Mr. Thornton's "100%" claim -- inserted more than one year after he filed this lawsuit, and more than two years after the last of the discriminatory events alleged in the case (see Amended Complaint, ¶¶ 52-53) - - is an obvious reference to a case pending in the United States

District Court for the Western District of Pennsylvania. In <u>Hohider v. United Parcel Service, Inc.</u>, Civil Action No. 04-363, a class of plaintiffs are suing UPS for: "…(a) maintaining a de facto policy, pattern and practice of requiring employees to provide a "full" or "100%" medical release, <u>without restrictions</u>, before permitting them to return to duty following a medical leave of absence…" <u>Hohider v. United Parcel Service, Inc.</u>, 2005 U.S. Dist. LEXIS 35911, *5 (W.D. Penn 2005) (emphasis added). The facts alleged in the <u>Hohider</u> case, however, differ markedly from the facts here. The <u>Hohider</u> plaintiffs allege that they were refused the opportunity to return to work. There is no evidence in this case that Mr. Thornton was ever refused the opportunity to return to work, with or without restrictions, as long as he was cleared to drive a tractor trailer under the applicable provisions of the Collective Bargaining Agreement. In fact, the evidence is to the contrary: he did return to work after absences <u>with restrictions</u> in place.

It is undisputed that on May 9, 2000, Mr. Thornton was seen by Dr. Albert Franchi who determined that Mr. Thornton needed surgery on his shoulder and prohibited him from driving a tractor trailer until after the surgery (copy attached as Tab A). Pursuant to the terms of the Collective Bargaining Agreement, Mr. Thornton then saw his own doctor, Dr. Kasparyan, who, on July 10, 2000, was treating him for chronic ulnar nerve neuropathy and "severe impingement syndrome involving the right shoulder." Dr. Kasparyan opined that Mr. Thornton needed two surgeries "as soon as possible." <u>See</u> Tab B. Dr. Kasparyan stated that Mr. Thornton could return to work as a tractor trailer driver until the procedures were performed, which UPS believed was inconsistent with the admonition that two surgeries needed to be performed "as soon as possible". On July 11, 2000, Dr. Franchi again stated that Mr. Thornton could not drive a tractor trailer. <u>See</u> Tab C. On July 26, 2000, Dr. Kasparyan modified his opinion and stated that Mr. Thornton would "eventually" need surgical intervention on his hand and shoulder and in

response to the question as to whether or not Mr. Thornton could drive said "legally I cannot give him full permission to do so." See Tab D. Because UPS did not believe that the reports from either Dr. Franchi or Dr. Kasparyan permitted Mr. Thornton to safely drive a tractor trailer, the Union and Mr. Thornton invoked the "third doctor" procedure under the terms of the Collective Bargaining Agreement.

On September 13, 2000, the third doctor, Dr. Wolf, released Mr. Thornton to return to work on September 18, 2000. See Tab E. Mr. Thornton then did return to driving tractor trailers on September 18, 2000 -- and resumed the route that he had been driving in May 2000 (Chelmsford to Worcester Rail).

In March 2001, Thornton missed approximately a week of work after he strained his back driving to Buffalo, NY. On March 14, 2001, Dr. Wolf examined Mr. Thornton and imposed work restrictions of no driving longer than ninety minutes without a break, a thirty pound lifting limit, a nine hour maximum work day and no repetitive lifting and bending. See Tab F. Upon receipt of the medical release by UPS, Mr. Thornton returned to work, and pursuant to the seniority provisions of the Collective Bargaining Agreement, he chose to drive the Chelmsford-Worcester-Hartford route.

Mr. Thornton then continued to drive various tractor trailer routes that he chose as one of the most senior drivers under the collective bargaining bidding procedure. On September 16, 2002, Mr. Thornton failed his DOT physical, which by law precluded him from driving for UPS. See Amended Complaint, ¶¶ 41-42. Subsequently, two doctors found that he could not do an "inside job" due to his right arm motor weakness and chronic back pain. See Tabs G and H, respectively. See also Amended Complaint, ¶ 47. The lifting requirements for inside jobs involve the moving of packages and either unloading them or loading them into or out of UPS

trucks. As Mr. Thornton admits, he could have seen his own doctor at this time, and if his doctor had disagreed with the other medical opinions, he could have invoked the "third doctor procedure" under the Collective Bargaining Agreement as he had in 2000. He decided not to do so. Mr. Thornton then filed for workers' compensation benefits and received a lump sum settlement, which, under Massachusetts law (G.L. c. 152, § 48(4)), means he is conclusively presumed unable to do his job through July 2008. He also filed for Social Security Disability Benefits and was qualified effective September 16, 2002. Since March 2003, Mr. Thornton has been receiving $1,613 per month from SSDI. Thornton retired from UPS (see Amended Complaint, ¶ 48) and was qualified for retirement benefits under Plans administered by the Teamsters Union. In any event, Mr. Thornton is precluded from making any claim for liability or damages for conduct occurring after August 2001. See accompanying Motion in Limine.

Under these undisputed facts, any evidence concerning a so-called "100%" rule has no probative value and it would be highly prejudicial to UPS to permit the jury to hear evidence from other witnesses about their claims that are wholly unrelated to the facts and circumstances of Mr. Thornton's unique case. See Fed. R. Evid. 403.

UNITED PARCEL SERVICE, INC.
By its attorneys,

/s/ Elizabeth A. Kowal
Barry J. Waters, BBO #645595
bwaters@murthalaw.com
Elizabeth A. Kowal, BBO #646326
ekowal@murthalaw.com
Murtha Cullina LLP
99 High Street
Boston, MA 02110
617-457-4000

**CERTIFICATE OF SERVICE**

I, Elizabeth A. Kowal, hereby certify that I have on this 4th day of February, 2008, electronically filed Defendant's Motion in Limine Precluding Any Testimony Regarding a UPS "100% Healed" or "100% Medical Release" Policy with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Michael L. Tumposky, Esq.
tumposky@masscriminallawyer.com
Stephen B. Hrones, Esq.
hrones@masscriminallawyer.com
Hrones, Garrity & Hedges, LLP
Lewis Wharf - Bay 232
Boston, MA 02110

/s/ Elizabeth A. Kowal

Physicians Billings Services, Inc.   (781) 933-3734

**Albert V. Franchi M.D.**
110 Winn Street
Suite 105
Woburn, MA 01801

EXHIBIT 2

Date: 5/9/00                                    Time In: _____

## MEDICAL TREATMENT AUTHORIZATION

_Charles Thornton_
**NAME OF EMPLOYEE**                             **COMPANY PHONE**

**NAME OF EMPLOYER**                             **COMPANY ADDRESS**

**AUTHORIZED SIGNATURE**       **DATE**          **CITY**            **STATE**      **ZIP**

### INJURY STATUS REPORT

**TREATMENT ADMINISTERED**      **WORK STATUS**                **MODIFIED WORK AS INDICATED BELOW**
☐ Office Visit Injury Treatment  ☐ Return to Regular Work       Duration of modified work _undetermined_
☐ Redress/Wound Check            ☐ Unable to return to Work     __ 1. No prolonged standing or walking
☐ Physician Exam (Results will be    for duration of disability __ 2. No climbing, bending or stooping
    transmitted by other means       _____ days               __ 3. Limited use of right/left hand.
☐ Return to work clearance                                      __ 4. No work near moving machinery.
                                                                __ 5. Weight lifting restriction:
                                 ☐ Re-Examination Recommended       __ 15-35 pounds
                                 _____                    __ 35-50 pounds
                                 · (days or date)
                                                                _NO TRUCK DRIVING_

**DIAGNOSIS:**  (R) Shoulder injury + until decompression Surgery.

DISABILITY ESTIMATES ARE VERY APPROXIMATE.
WE URGE FOLLOW UP BY DR. FRANCHI RATHER THAN WORK ABSENCE FOR
MORE THAN THREE DAYS. IF THERE ARE QUESTIONS PLEASE CONTACT US.

This will authorize Albert V. Franchi M.D. to furnish to my
employer all information regarding my condition and treatment.

_Charles Thornton_                               _[signature]_
**Signature of patient**                         **Physician/s Signature**

MAY 11 '65


# Lahey
CLINIC

Department of Orthopaedic Surgery
41 Mall Road
Burlington, MA 01805
781-744-8650 8650
Fax 781-744-5345

William L. Healy, M.D.
  Chairman

Orthopaedic Surgery
William L. Healy, M.D.
Bernard A. Pfeiffer, M.D.
Paul M. Smiley, M.D.
Richard M. Wilk, M.D
Richard Iorio, M.D.
Mark J. Lemos, M.D.
Mark P. Slovenkai, M.D.
Michael A. Dube, M.D.
Robert S. Waskowitz, M.D.
David J. Fennel, M.D.
Peter J. Gard, M.D.
Robert A. Provost, M.D.

Hand Surgery
Steven W. Morgles, M.D.
  Section Head
N. George Kasparyan, M.D., Ph. D.
Alice A. Hunter, M.D.

Podiatry
Timothy J. Tobin, D.P.M.
Dennis A. Tuck, D.P.M.

July 10, 2000

RE:      Charlie L. Thornton
         LC#  139 63 69

To Whom It May Concern:

Charlie Thornton is under my care for treatment of chronic ulnar nerve neuropathy on the right with severe impingement syndrome involving the right shoulder. Mr. Thornton is a tractor-trailer truck driver and these problems are both work related. Mr. Thornton will require surgical intervention of both of these problems as soon as possible, each to be done separately.

These problems are job related due to wear and tear over many years as a truck driver.

Mr. Thornton can return to work as a tractor trailer driver until these procedures are performed.

Sincerely,

N. George Kasparyan, M.D.

NGK/ljb

Respect • Caring • Teamwork • Excellence • Commitment to Personal Best

UPS1542

Physicians Billings Services, Inc. (781) 933-3734

**Albert V. Franchi M.D.**
110 Winn Street
Suite 105
Woburn, MA 01801                                               (781) 933-6886

Date: 7/11/10                    Time In: _____

## MEDICAL TREATMENT AUTHORIZATION

NAME OF EMPLOYEE: Charles Thornton

NAME OF EMPLOYER: _____    COMPANY PHONE: _____

AUTHORIZED SIGNATURE ___ DATE ___    COMPANY ADDRESS ___ CITY ___ STATE ___ ZIP ___

### INJURY STATUS REPORT

**TREATMENT ADMINISTERED**
- ☐ Office Visit Injury Treatment
- ☐ Redress/Wound Check
- ☐ Physician Exam (Results will be transmitted by other means)
- ☐ Return to work clearance

**WORK STATUS**
- ☐ Return to Regular Work
- ☐ Unable to return to Work for duration of disability _____ days
- ☐ Re-Examination Recommended _____ (days or date)

**MODIFIED WORK AS INDICATED BELOW**
Duration of modified work: 3 wk
1. No prolonged standing or walking
2. No climbing, bending or stooping (circled)
3. Limited use of right/left hand.
4. No work near moving machinery.
5. Weight lifting restriction:
   - 15-35 pounds (circled)
   - 35-50 pounds

NO DRIVE tractor trailer

DIAGNOSIS: ® _____ injured

DISABILITY ESTIMATES ARE VERY APPROXIMATE.
WE URGE FOLLOW UP BY DR. FRANCHI RATHER THAN WORK ABSENCE FOR
MORE THAN THREE DAYS. IF THERE ARE QUESTIONS PLEASE CONTACT US.

This will authorize Albert V. Franchi M.D. to furnish to my
employer all information regarding my condition and treatment.

Signature of patient _____        Physician's Signature _____

THORNTON-0044

# Lahey
## CLINIC

July 26, 2000

Department of Orthopaedic Surgery
41 Mall Road
Burlington, MA 01805
781-744-8650
Fax 781-744-5345

William L. Healy, M.D
 Chairman

Orthopaedic Surgery
William L. Healy, M.D.
Bernard A. Pfeifer, M.D
Paul M. Smiley, M.D.
Richard M. Wilk, M.D.
Richard Iorio, M.D.
Mark J. Lemos, M.D.
Mark P. Slovenkai, M.D
Michael A. Dube, M.D
Robert S. Waskowitz, M.D
David J. Fehnel, M.D
Peter J. Gard, M.D.
Robert A. Provost, M.D.

Hand Surgery
Steven W. Margles, M.D.
 Section Head
N. George Kasparyan, M.D., Ph. D.
Alice A. Hunter, M.D.

Podiatry
Timothy J. Tobin, D.P.M.
Dennis A. Tuck, D.P.M.

RE:    Charlie Thornton
       LC# 139 63 69

To Whom It May Concern:

This letter is in regards to Mr. Charlie Thornton who is under my care for a chronic ulnar nerve neuropathy on the right and severe shoulder impingement on the right. Mr. Thornton is a tractor-trailer driver and I do believe these problems are work related and work induced. I believe eventually Mr. Thornton will require surgical intervention for both of these problems. I do believe these problems are job related due to wear and tear over many years as a truck driver.

I have been asked to reinvestigate the question of whether Mr. Thornton has the capacity to work as a tractor trailer driver until these procedures are performed. The issue is a complex one. Although Mr. Thornton does have good strength and feels to have the ability to be able to continue working as a truck driver, I have advised him that although I feel he can work, I cannot give absolute assurance that this would not be a difficulty for him as a driver. My understanding is that North New England District Human Resources in Hudson under the auspices of United Parcel Service has received another opinion by an orthopaedic surgeon that he cannot continue to drive. Therefore, clearly I have advised Mr. Thornton that I cannot, with absolute certainty, give him medical legal clearance to drive. I have explained to Mr. Thornton that medical legally I cannot place the burden of allowing him to drive with the potential of an accident occurring, fall under the responsibility of the Lahey Clinic. Therefore, although I feel strongly that he is able to drive medical legally I cannot give him full permission to do so. I strongly recommend a third opinion regarding his physical ability to be able to drive.

Sincerely,

N. George Kasparyan, M.D.

THORNTON-0051

Respect • Caring • Teamwork • Excellence • Commitment to Personal Best

 

Sept. 13, 2000

Charles Thornton

Treated for right shoulder impingement syndrome, since December, pain free; some weakness of right hand grip secondary to ulnar neuropathy noted since 1998; normal right shoulder ROM; axilla clear; no shoulder deformities. Upper extremity sensation & motor function entirely intact except for mild -1- hand intrinsic atrophy; x-rays; (MRI) - right shoulder, impingement syndrome.

DIAGNOSIS: Right shoulder impingement syndrome; ulnar neuropathy.

RECOMMENDATIONS: Normal activity is permitted (hand weakness secondary to ulnar neuropathy) has not interfered with driving in the past and the present. Shoulder symptoms are absent. Appointment if weakness increases or other symptoms are noted.

THORTON-0220

# HEALTH STOP +

228 DANIEL WEBSTER HIGHWAY
NASHUA, NH 03060
TEL: 603-888-9200
FED ID# 02-0475336

| NAME | 099480 |
|---|---|

**GENERAL CONSENT FOR TREATMENT**

I, _Charlie Thornton_, hereby give Health Stop, Inc. and its physicians my consent for any necessary evaluation and treatment upon _____.
Signed: _Charlie F Thornton_   Relationship to Patient _____
Today's Date _____   Witness _____

| LAST NAME | FIRST | MI | TODAY'S DATE M/D/Y | ARRIVAL |
|---|---|---|---|---|
| Thornton | Charlie | L | 3 14 01 | 5- |
| ADDRESS | | | | DOI |
| 6 Pinedale Ave | | | | |
| CITY | STATE | ZIP | HOME PHONE | BUSINESS PHONE |
| Billerica MA 01821 | | | 978 667-0303 | |
| DATE OF BIRTH | AGE | SEX | S.S.# | EMPLOYER NAME | PARENT NAME |
| 10/24/45 | 55 | M | 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 | U.P.S. | |
| | | | ADDRESS | CITY Chelmsford | STATE MA | ZIP |

PAID BY CC: ☐ CASH ☐ CHECK    INSURANCE (PRIMARY) #

☐ BLUE SHIELD MASS.  ☐ OCC MED  ☐ PRIVATE INSURANCE
☐ MASTER HEALTH PLUS  ☐ OCC MED
☐ MEDICARE  PRIMARY CARE  ☐ NH BLUE SHIELD
☑ WORKER'S COMP.  ☐ NH MEDICARE

I authorize payment of medical benefits directly to Health Stop, Inc. and assume responsibility for any remaining balance.
Signed: _Charlie F Thornton_

| BP | T | P | R | HT | WT | LMP | LAST TET. | MEDICATIONS: | ALLERGIES: |
|---|---|---|---|---|---|---|---|---|---|
| 146/98 | | 88 | 14 | | | | | Percocet + prn hs  Soma - hs prn  Loratab - prn | Ibuprofen |

PHYSICIAN REPORT:

COMPLAINT: ACCIDENT OR INJURY:    INJURY DATE:

No shoulder edema
Healed (R) wrist incision
— ulnar paresthesias (R) hand; distal motor function int.
No lumbar extremities; (R) sciatica

Rev

REFERRING PHYSICIAN

DIAGNOSIS: S/P (R) CTS
LAB/X-RAY: old lumbar HNP; (R) shoulder impingement
TREATMENT: Return to driving work per restrictions attached

| ✓ | CODE | OFFICE VISIT | FEE | ✓ | CODE | LABS | FEE | ✓ | CODE | LABS | FEE | ✓ | CODE | X-RAY | F |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 99203 | NEW OFFICE VISIT | | | 85024 | CBC W/DIFF | | | 86312 | HIV | | | 70260 | SKULL | |
| | 99202 | NEW LIMITED | | | 86308 | MONO | | | 88150 | PAP SMEAR | | | | | |
| | 99205 | NEW COMPREHENSIVE | | | 84703 | HCG PREGNANCY | | | 84479 | T3 UPTAKE | | | | OTHER | |
| ✓ | 99213 | RETURN OFFICE VIS. | | | 82948 | GLU SCR | | | 84443 | TSH | | | 90703 | TET. TOX. SCC | |
| | 99215 | RETURN COMP. | | | 81000 | URINALYSIS | | | 84436 | T4 | | | J1030 | DEPO MED 40 MG | |
| | 99386 | BASIC PHYSICAL | | | 81000 | URINE DIP | | | | X-RAY | | | 93000 | EKG W/INTERPRET | |
| | | SCHOOL PHYSICAL | | | 86317 | STREP ENZYME | | | 71020 | CHEST | | | 92551 | AUDIOMETIC | |
| | | MAJOR PHYSICAL | | | 87088 | UR. CULT. | | | 73610 | ANKLE | | | | | |
| | | PROCEDURES | | | 87075 | GC. CULT. | | | 73630 | FOOT | | | 95115 | ALLERGY INJ-1 | |
| | | SPLINT APPLIC | | | 87088 | UR. CULT. (MEDICARE) | | | 73130 | HAND | | | 94010 | SPIROMETRY | |
| | | CAST APPLIC. | | | 82270 | FECAL OCC | | | 73562 | KNEE | | | | | |
| | 20600 | ARTHROCENTESIS, SM | | | 85651 | ESR | | | 72050 | C-SPINE | | | | SUPPLIES | |
| | 20605 | ARTHROCENTESIS, MED | | | 82465 | CHOLESTEROL | | | 72070 | T-SPINE | | | A4550 | SURG. TRAY | |
| | 20610 | ARTHROCENTESIS LG | | | 80053 | (SMAC 25) | | | 72100 | L-S SPINE | | | | | |
| | 69210 | CERUMEN REMOV. | | | 86592 | VDRL | | | 72170 | PELVIS | | | | | |
| | | LACERATION 1 LAYER | | | 80052 | PREMARITAL/RUBELLA | | | 73510 | HIP | | | | CHARGES | |
| | | LACERATION 2 LAYER | | | 87110 | CHLAMYDIA | | | 70220 | SINUS | | | | | |
| | | | | | 80100 | DRUG SCREEN | | | 73030 | SHOULDER | | | | | |
| | | | | | 80061 | CARDIAC RISK | | | 73080 | ELBOW | | | | | |
| | | | | | 87250 | HERPES CULTURE | | | 73110 | WRIST | | | | | |

PATIENT INSTRUCTIONS _____

THORNTON-0048

DEA #_____

HEALTHSTOP, INC.
228 DANIEL WEBSTER HIGHWAY
NASHUA, NH 03060
OFFICE: 603-888-9200

NAME: Charlie Thornton
ADDRESS: _____  DATE: 3/14/01

℞ (Please Print)

Return to driving
Work on 3/19/01 is permitted with
the following restrictions
request by the patient:
① no driving longer than 90 min at once
② 30 lb lifting limit
③ 9 hour maximum work-day
④ no repetitive lifting or bending.

REFILL ___ TIMES  PRN

TO INSURE BRAND NAME DISPENSING, PRESCRIBER MUST WRITE 'MEDICALLY NECESSARY'
ON THE PRESCRIPTION.
87-NOV-00

06-100024570-13-22546_0006

UPS-0026

38. Prior to accepting the reassignment to the Chelmsford-Buffalo route in the fall of 2001, Mr. Thornton, again, requested to work in an available light duty or "inside" job. U.P.S. denied Mr. Thornton's request to work a light duty or "inside" job.

39. Faced with the prospect of loosing his job for the second time within a year, Mr. Thornton reluctantly bid on the Chelmsford-Buffalo route.

40. Throughout 2002 Mr. Thornton's back condition and shoulder condition rapidly deteriorated because the Chelmsford-Buffalo assignment involved lifting between 70-90 pounds and driving long distances without a break.

41. On September 16, 2002, Mr. Thornton underwent his biannual physical examination as required by the Department of Transportation (hereinafter "the D.O.T."). Mr. Thornton was advised that he had failed the physical examination due to his job-related injuries to his right shoulder and chronic lower back pain.

42. Based upon the physical evaluation of September 16, 2002, Mr. Thornton was diagnosed as suffering from a permanent medical condition related to his right shoulder injury and chronic back problem which precluded him from working as a tractor trailer driver.

43. On September 16, 2002, Mr. Thornton immediately advised his supervisor, Kenneth Mundry (hereinafter "Mr. Mundry"), that he had failed the D.O.T. physical examination.

44. Upon learning of Mr. Thornton's failure to pass the D.O.T. examination, Mr. Mundry offered Mr. Thornton an "inside" job in accordance with the collective bargaining agreement with the Union. Approximately one hour later, Mr. Mundry rescinded the offer of an "inside" job to Mr. Thornton.

45. Mr. Thornton filed a grievance with the Union based upon the failure of U.P.S. to offer him an "inside" job.

46. The Union declined to proceed with Mr. Thornton's grievance regarding U.P.S.' failure to provide him with an "inside" job.

47. On September 19, 2002, and December 6, 2002, respectively, physicians selected by U.P.S. determined that Mr. Thornton's medical condition had deteriorated to the point that he was permanently unable to perform "inside" jobs such as operations clerk, car washer; sorter, irregular processor, preloader, pick off/high volume, and pick off/runout belt.

48. Mr. Thornton last worked at U.P.S. on September 16, 2002 and eventually retired from U.P.S.

49. The failure of U.P.S. between 2001 and September 2002 to continuously offer Mr. Thornton the reasonable accommodation of driving with a maximum lifting restriction of 30 pounds and a limit of 90-minutes of driving without a break, or in the alternative, allow him to work available "inside" jobs, caused Mr. Thornton's physical condition to deteriorate to the point that he was declared medically unfit to perform any function at U.P.S.

50. The failure of U.P.S. to consistently adhere to the work restrictions in place or offer an available "inside" job between February, 2001 and September 16, 2002 is a violation of the A.D.A. 42 U.S.C. § 12101 et seq. and M.G.L. c. 151B, § 4 (16).

51. U.P.S discriminated against Mr. Thornton on the basis of his handicap due to his right shoulder injury and chronic back condition.