UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES THORNTON,<br>Plaintiff<br><br>v.<br><br>UNITED PARCEL SERVICE, INC.,<br>Defendant | ]<br>]<br>] C.A. NO. 05-10210-RGS<br>]<br>]<br>]<br>] |

## DEFENDANT'S PRELIMINARY REQUEST FOR JURY INSTRUCTIONS

Defendant, United Parcel Service, Inc., requests that this Court give the following jury instructions.

UNITED PARCEL SERVICE, INC.

By its attorneys,

/s/ Elizabeth A. Kowal
Barry J. Waters, BBO #645595
bwaters@murthalaw.com
Elizabeth A. Kowal, BBO #646326
ekowal@murthalaw.com
Murtha Cullina LLP
99 High Street
Boston, MA 02110
617-457-4000

# JURY INSTRUCTION # 1

## (All Persons are Equal Before the Law – Corporations)

In this case, the plaintiff is a person and the defendant, UPS, is a corporation. A corporation is an entity created by the law. The mere fact that some of the parties are natural persons and one is a creation of the law should not play any part in your deliberations.

You are to consider and decide this case as an action between persons of equal standing or equal worth in the community, and holding the same or similar stations in life. A corporation, such as UPS, is entitled to the same fair trial at your hands as a natural person. All persons, including an entity like a corporation, are equal before the law and must be treated as equals in a court of law.[1]

---

[1] Opinion of the Justices to the Senate, 220 Mass. 627, 631-632 (1915) (citing the constitutional guaranty that all persons, including corporations, shall be equal in the protection afforded by the laws).

## JURY INSTRUCTION #2

### (Disability Discrimination)

This is a case alleging disability discrimination under both Massachusetts state law and the federal Americans with Disabilities Act. While the two statutes have some differences, they have identical definitions for the terms "disability" under the ADA and "handicap" under the Massachusetts law, so I will for convenience sake use the term "disability" to mean both an ADA disability and a Massachusetts handicap.

Under both the ADA and Massachusetts law chapter 151B, an employer may not discriminate against a qualified individual with a disability.[1] Disability discrimination can be either direct discrimination, as by terminating someone because they are or become disabled, or by failing to provide what the law calls a "reasonable accommodation" to a disability.

In this case, Mr. Thornton is not claiming that UPS terminated his employment. Instead, Mr. Thornton retired at the end of 2002. His claim, therefore, is limited to a claim that UPS discriminated against him while he was employed at UPS.

Because this case encompasses events over many years, you must analyze the elements of the case at the particular times that the discrimination is alleged.

---

[1] Carroll v. Xerox Corp., 294 F.3d 231, 237-38 (1st Cir. 2002).

## JURY INSTRUCTION #3

### (Disability)

The first element that must be analyzed is whether, at each time that discrimination is alleged, Mr. Thornton was "disabled" under the law. It is Mr. Thornton's burden to prove to you that he was disabled at the time he alleges UPS discriminated against him. If at any time that discrimination is claimed, you find that Mr. Thornton was not "disabled" as I will define for you, you must find for UPS on that aspect of the case.

In order to be disabled, an individual must have a mental or physical impairment that substantially limits a major life activity.[1] Mr. Thornton alleges that he has or had a physical, not mental impairment.

Not all physical impairments are disabilities. Mr. Thornton must prove to you that his physical impairment or impairments is substantially limiting because it prevents or significantly restricts the duration, manner or conditions under which Mr. Thornton can perform on or more major life activities.[2]

---

[1] 42 U.S.C. § 1202 (2); M.G.L. c. 151B, § 1(17)
[2] 29 C.F.R. §§ 1630.2(j) and (l).

# JURY INSTRUCTION #4

## (Major Life Activity)

Both state and federal law include within the definition of "major life activities" caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.[1] "Substantially limits" means that Mr. Thornton is unable to perform a major life activity that the average person in the general population can perform, or is significantly restricted as to the condition, manner or duration under which he can perform a particular major life activity as compared to condition, manner, or duration under which the average person in the general population can perform that same major life activity. To be substantially limiting, Mr. Thornton's physical impairment must considerably limit his major life activities or limit them to a large degree.[2] In determining whether impairment substantially limits a major life activity, you should consider:

(1) the nature and severity of the impairment

(2) the duration or expected duration of the impairment; and,

(3) the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment.

---

[1] G.L. c. 151B, § 1(20); 29 C.F.R. § 1620.2(i).
[2] 42 U.S.C. §§1202, 12111(8); 29 C.F.R. § 1630.2; Toyota Motor Mfg, Kentucky, Inc. v. Williams, 534 U.S. 184 (2002); Murphy v. United Parcel Service, Inc., 527 U.S. 516 (1999).

# JURY INSTRUCTION #5

## ("Regarded As" Disabled)

If you find that Mr. Thornton was not actually disabled, he may also be able to satisfy this element by showing that UPS "regarded" him as disabled. In order to do this, Mr. Thornton must show that UPS mistakenly believed that he had an impairment that substantially limited a major life activity. As with proving actual disability, Mr. Thornton must identify the major life activity and the level of impairment that UPS mistakenly believed in order to satisfy a "regarded as" claim. If UPS mistakenly believed that Mr. Thornton had an impairment that limited a major life activity, but did not believe that the limitation was "substantial" than there is no "regarded as" disability claim.[1]

---

[1] Benoit v. Technical Manufacturing Corp., 331 F. 3d 166, 176 (1st Cir. 2003).

## **JURY INSTRUCTION #6**

### **(Qualified)**

If Mr. Thornton has proven to you that he was disabled at each time of the alleged discrimination, he must next prove to you that, at each time, he was also "qualified" to perform the job in question. Under both the ADA and Massachusetts law, "qualified" means that the individual can perform the essential functions of a job, with or without a reasonable accommodation.[1]

Essential functions of a job are those functions that are core functions of the job, rather than those that are peripheral. The employer has the right to set the essential functions of any given job, but a function does not become "essential" merely because it is declared to be so. It must really be an important part of the job.[2]

A job function may be considered essential for any of several reasons, including but not limited to the following:

(1) because the reason the position exists is to perform that function,
(2) because of the limited number of employees who can perform that job function and/or
(3) because the function is highly specialized so that a person is hired for his/her expertise or ability to perform that particular function.

In determining whether a particular function is essential you may consider:

(1) the employer's judgment as to which functions are essential,
(2) the amount of time spent on the job performing the function,
(3) the consequences of not requiring the employee to perform the function
(4) the terms of a collective bargaining agreement
(5) the work experience of past incumbents in the job and/or
(6) the current work experience of persons with similar jobs.

---

[1] 29 C.F.R. § 1630.2(n)
[2] Id.; Ward v. Mass. Health and Research Inst., Inc., 209 F.3d 29, 34 (1st Cir. 2000).

## JURY INSTRUCTION #7

### (Qualified Individual—SSDI)

In addition, in considering whether Mr. Thornton could perform the essential functions of the job at issue, you may consider the fact that he qualified for Social Security Disability benefits effective as of September 16, 2002. In order to qualify for SSDI, Mr. Thornton had to demonstrate that he was totally disabled, not partially disabled and not having a short-term disability. Social Security found Mr. Thornton to be totally disabled and determined that (1) he could not do the work that he had done before; (2) he could not adjust to other work because of his medical condition; and (3) his disability had lasted or was expected to last for at least one year or to result in death. The pursuit and receipt of Social Security benefits does not necessarily mean that Mr. Thornton cannot work, but it is evidence to consider while determining whether Mr. Thornton was a qualified individual with a disability.[1]

---

[1] Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 797-798 (1999) (to survive summary judgment, an ADA plaintiff must reconcile her SSDI contention that she was too disabled to work); Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 452 (2002) ("a claim for disability benefits on the basis of total disability is evidence of the plaintiff's inability to perform the essential functions, but it is not dispositive if the plaintiff is able to raise a question of fact through other evidence...sufficient to warrant a reasonable juror's conclusion that the plaintiff could perform the essential functions of the job"); Sheehan v. Marr, 207 F.3d 35, 40 (1st Cir. 2000) (employees may explain discrepancies between statements about their disabilities made in pursuing benefits and in litigating their ADA claims).

# JURY INSTRUCTION #8

## (Reasonable Accommodation)

If a disabled employee can perform all the essential functions of a position without an accommodation, then he is a qualified individual with a disability. If an employee cannot perform the essential functions of a position without an accommodation, the question then becomes whether there is a "reasonable accommodation" that would allow the employee to perform the essential functions of the job. An employer is not required to eliminate any essential function of a position, but is merely required to provide accommodations that would allow the individual to perform those essential functions.[1]

In connection with his claim of a denial of a reasonable accommodation, it is Mr. Thornton's burden to prove that there were reasonable accommodations that UPS could have made to a position that would have allowed him to perform the essential functions of his job. However, employers are not required to provide the best accommodation, the specific accommodation that the employee wants, or every accommodation the employee asks for.[2]

---

[1] Kvorjak v. Me., 259 F.3d 48, 57 (1st Cir. 2001); Laurin v. Providence Hosp. & Mass. Nurses Ass'n, 150 F.3d 52, 56 (1st Cir. 1998); Feliciano v. R.I., 160 F.3d 780, 785 (1st Cir. 1998); Beal v. Bd. Of Selectmen of Hingham, 419 Mass. 535, 545 (1995); Cox v. New England Tel. & Tel., 414 Mass. 375, 390 (1993).
[2] Bryant v. Caritas Norwood Hosp., 345 F. Supp. 2d 155, 169 (D. Mass. 2004), and cases cited.

## JURY INSTRUCTION #9

### (Reassignment)

Now we come to one area of the law in which federal law differs from Massachusetts law. Under federal law, if a disabled employee cannot perform the essential functions of his own job, reassignment to a vacant job that he can perform may be a reasonable accommodation. Under Massachusetts law, however, reasonable accommodations are only those that would allow the employee to perform the essential functions of his own job. Failure to reassign is also not a violation of Massachusetts law.[1]

For the period of September 1, 2001 onward, Mr. Thornton's claim is solely under Massachusetts law. Therefore, I instruct you that UPS did not violate the law in not providing Mr. Thornton with an alternate position on or after September 1, 2001. I further instruct you that as of September 2002, Mr. Thornton was no longer qualified to perform his driving job because he did not have a valid DOT card, which was required under federal law to perform the driver position.

Thus, unless Mr. Thornton proves to you that UPS discriminated against him or denied a reasonable accommodation to him at a time when he was a qualified individual with a disability, you must find for UPS.

---

[1] Lolos v. Solutia, Inc., 193 F. Supp.2d 364 (D. Mass. 2002), citing Hayward v. Mass. Water Resources Auth., 2001 Mass. Super. LEXIS 231 at *6.

# JURY INSTRUCTION #10

## (Collective Bargaining Agreement)

You have heard evidence that Mr. Thornton was member of a union called the Teamsters and that Mr. Thornton's specific branch of that Union was called Local 25. UPS and the Teamster's relationship is governed by a document called a collective bargaining agreement. As a member of the Teamsters, therefore, the terms and conditions of Mr. Thornton's employment are also governed by the terms of the collective bargaining agreement. In the event that any of Mr. Thornton's requests for reassignments or other accommodations conflicted with the terms of the collective bargaining agreement, you must find that Mr. Thornton's requests for reassignments or accommodations were not reasonable.[1]

---

[1] Laurin v. Providence Hosp. and Mass. Nursing Ass'n, 150 F.3d 152, 60 (1st Cir. 1998); Feliciano v. R.I., 160 F.3d 780, 787 (1st Cir. 1998).

# JURY INSTRUCTION #11

## (Adverse Employment Action)

Mr. Thornton must then show that he was subjected to an adverse employment action that affected the material terms, conditions or privileges of his employment. The mere fact that Mr. Thornton was displeased by something UPS did, or failed to do, does not rise to the level of a materially adverse employment action. Usually, in employment discrimination claims, the employer must have take something of consequence from the employee, like discharging or demoting him, reducing his salary, or divesting him of significant responsibilities, or failing to follow an internal practice of considering him for promotion after a particular period of service.[1] If UPS did not subject Mr. Thornton to what you consider to be an adverse employment action, you must find for UPS.

---

[1] Blackie v. Maine, 75 F.3d 716, 725-726 (1st Cir. 1996)

# JURY INSTRUCTION #12

## (Constructive Discharge)

In order to find that Mr. Thornton was constructively discharged from UPS, Mr. Thornton must show that the working conditions at UPS would have been so difficult that any reasonable person would have felt compelled to resign.

That is, Mr. Thornton has to show that based on an objective standard, the conditions under which he was being expected to work by UPS in September 2002, were intolerable.[1] A single isolated act is not enough to support a constructive discharge claim. The adverse working conditions must be unusually aggravated or amount to a continuous pattern before the situation can be deemed to be intolerable.[2]

---

[1] DiLuca v. Communications & Power, Industries Inc., 65 Mass. App. Ct. 1106 (2005); GTE Products Corp. v. Stewart, 421 Mass. 22 (1995).

[2] Id.

# JURY INSTRUCTION #13

## (Damages—General)

If you find that UPS has discriminated against Mr. Thornton under the law as I have charged you, you may consider damages, which I will instruct on. If you find that UPS did not discriminated, then you must enter a verdict for UPS.

# JURY INSTRUCTION #14

## (Damages)

Mr. Thornton claims that UPS' conduct caused him to suffer economic and non-economic damages. If Mr. Thornton has proved to you that UPS unlawfully discriminated against him, you can decide the amount of damages, if any, that will fairly and reasonably compensate Mr. Thornton for the loss he suffered because of their conduct. Any damages you award must conform to three criteria. First, any damages must be shown to a reasonable certainty and cannot be measured by speculation or guess.[1] Second, they must be caused by UPS' specific alleged wrongdoing.[2] And third, even if you find that UPS discriminated against Mr. Thornton because of his disability with regard to more than one adverse employment action, he can only recover enough to make him whole.

---

[1] Connolly v. Suffolk County Sheriff's Dept., 62 Mass. App. Ct. 187, 198 (2004); Kolb v. Goldring, Inc., 694 F.2d 869, 873 (1st Cir. 1982).

[2] Conway v. Electro Switch Corp., 402 Mass. 385, 388 (1988).

# JURY INSTRUCTION #15

## (Monetary Losses)

The first category of damages is monetary losses. If you find that Mr. Thornton would have earned more money during his employment absent any discrimination than he actually did, then you should award Mr. Thornton that amount. You cannot award loss wage damages after August 2001 based on a claim that UPS did not place him in an job other than his tractor trailer driving job. In addition, you cannot award lost wage damages to Mr. Thornton after he was disqualified from driving on September 16, 2002. Any wage damages must be offset by unemployment compensation benefits, Social Security disability benefits, and any other disability benefits that he received.[1]

---

[1] Blockel v. J.C. Penney Co., Inc., 337 F.3d 17, 27 (1st Cir. 2003) (plaintiff was entitled to recover what she would have been paid had she not been discriminated against, minus the amount of disability benefits); Conway v. Electro Switch Corp., 402 Mass. 385, 388-389 (1988); Black v. Sch. Comm. of Malden, 369 Mass. 657, 661-662 (1976).

# JURY INSTRUCTION #16

## (Duty to Mitigate)

A party claiming damages has a duty to mitigate his damages. This means that for any period of time that Mr. Thornton claims he lost compensation while not working at UPS stopped working for UPS, he was legally obligated to find alternative employment to the extent possible or otherwise. You must take this into account if you intend to award Mr. Thornton damages for lost future earnings and benefits. Mr. Thornton must have proven to you that these damages, like all damages, were reasonably certain to have been caused by UPS' conduct. He must also show you that he complied with this duty to mitigate in order to recover.[1]

---

[1] Blockel v. J. C. Penney Co., 337 F.3d 17, 27 (1st Cir. 2003); Conway v. Electro Switch Corp., 402 Mass. 385 (1988).

# JURY INSTRUCTION #17

## (Lump Sum Workers' Compensation Settlement)

Under Massachusetts law, if an employee accepts any lump sum amount in return for the right to claim future weekly benefits, a presumption arises that the employee is physically incapable of returning to work with the employer. This presumption continues for a period of one month for each fifteen hundred dollar amount included in the settlement for future weekly benefits.

In this case Mr. Thornton received such a settlement amount and you must presume that he is physically unable to work until July 2008.[1]

---

[1] M.G.L. ch. 152, § 48.

# JURY INSTRUCTION #18

## (Damages--Social Security Disability Insurance)

In considering whether Mr. Thornton has been damaged, you may consider that he qualified for Social Security Disability effective as of September 16, 2002. As previously stated, in order to qualify for SSDI, Mr. Thornton had to demonstrate that he was totally disabled, not partially disabled and not having a short-term disability. Social Security found Mr. Thornton to be totally disabled and determined that (1) he could not do the work that he had done before; (2) he could not adjust to any other work in the economy because of his medical condition; and (3) his disability had lasted or was expected to last for at least one year or to result in death. The pursuit and receipt of Social Security benefits does not necessarily mean that Mr. Thornton cannot work, but it is evidence to consider while determining whether Mr. Thornton is entitled to damages after September 16, 2002.[1]

---

[1] Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 797-798 (1999) (to survive summary judgment, an ADA plaintiff must reconcile her SSDI contention that she was too disabled to work); Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 452 (2002) ("a claim for disability benefits on the basis of total disability is evidence of the plaintiff's inability to perform the essential functions, but it is not dispositive if the plaintiff is able to raise a question of fact through other evidence...sufficient to warrant a reasonable juror's conclusion that the plaintiff could perform the essential functions of the job"); Sheehan v. Marr, 207 F.3d 35, 40 (1st Cir. 2000) (employees may explain discrepancies between statements about their disabilities made in pursuing benefits and in litigating their ADA claims).

## CERTIFICATE OF SERVICE

I, Elizabeth A. Kowal, hereby certify that I have on this 4th day of February, 2008, electronically filed Defendant's Preliminary Request for Jury Instructions with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Michael L. Tumposky, Esq.
tumposky@masscriminallawyer.com
Stephen B. Hrones, Esq.
hrones@masscriminallawyer.com
Hrones, Garrity & Hedges, LLP
Lewis Wharf - Bay 232
Boston, MA 02110

/s/ Elizabeth A. Kowal